# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 21, 2016         Decided January 24, 2017

No. 15-3063

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES ANTONIO JONES, ALSO KNOWN AS TONIO,
APPELLANT

———

Consolidated with 15-3064

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:89-cr-00162-4)
(No. 1:89-cr-00162-2)

———

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Elizabeth Trosman*, *Chrisellen R. Kolb*, *William B. Wiegand*, and *John Dominguez*, Assistant U.S. Attorneys.

Before: KAVANAUGH and WILKINS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  Appellants Melvin Butler and James Antonio Jones are each serving lengthy prison sentences for drug offenses.  Based on a recent retroactive amendment to the United States Sentencing Guidelines, they sought reductions of those sentences under 18 U.S.C. § 3582(c)(2).  Although the district court agreed that it could reduce their sentences, it declined to do so after considering the relevant factors listed in 18 U.S.C. § 3553(a). *United States v. Butler*, 130 F. Supp. 3d 317 (D.D.C. 2015).

Appellants challenge those denials as substantively unreasonable.  Before reaching the merits, we must consider our statutory basis to hear these appeals and whether that authority extends to reviewing the reasonableness of the district court's decisions.  Since we find that 28 U.S.C. § 1291 permits such review, we consider the underlying denials and, finding them to be reasonable, we affirm.

\* \* \*

Section 3582 of Title 18 sets out the statutory background for the district court proceedings that we review.  While it starts with the general proposition that a court may not modify a term of imprisonment "once it has been imposed," it goes on to create exceptions, notably § 3582(c)(2). Where a defendant has been sentenced to a term "based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) . . . if such a reduction is consistent with applicable

policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(2); see U.S.S.G. § 1B1.10(a) (policy statement on reductions); see also *Dillon v. United States*, 560 U.S. 817, 826-27 (2010) (further explaining the framework).

Along with several others, appellants were convicted in 1989 of conspiracy to distribute large amounts of cocaine. After post-trial motions and appeals (the details of which are not relevant here), the district court determined that, based on the quantity of drugs and various enhancements, the then-mandatory Sentencing Guidelines provided a range of 324 to 405 months for both Butler and Jones. The district court then imposed sentences at or near the top of that range—405 months for Butler and 393 months for Jones. According to the Bureau of Prisons, Butler is scheduled to be released on October 14, 2017 and Jones on February 23, 2018.

Roughly twenty years later, the Sentencing Commission adopted amendments that authorized retroactive reduction of the sentences for most drug offenses. Unlike prior amendments that targeted specific substances, Amendment 782 worked an across-the-board reduction in the offense levels for most drug crimes. And in Amendment 788 the Commission provided for courts to apply the reduction retroactively after determining that offense levels had previously been set unnecessarily high and "that a reduction would be an appropriate step toward alleviating the overcapacity of the federal prisons." U.S.S.G. Supp. to App'x C, Amend. 788 at 86. But the Commission built a one-year delay into its retroactivity amendment (until November 1, 2015), "to give courts adequate time to obtain and review the information necessary to make an individualized determination . . . of whether a sentence reduction is appropriate" based on the § 3553(a) factors. *Id*. at 87; see also U.S.S.G. § 1B1.10(e)(1).

Appellants filed unopposed motions invoking Amendment 782 to reduce their sentences to time served as of November 1, 2015. The district court agreed that appellants were each eligible for a reduction under Amendment 782, which reduced their sentencing ranges to 262 to 327 months. *Butler*, 130 F. Supp. 3d at 321. (Although by that point appellants had each served more than 327 months, the terms of Amendment 788 limited their maximum benefit to release on its November 1, 2015 start date.) Despite appellants' eligibility for reductions, the district court considered defendants' motions in light of the § 3553(a) factors and held that any reductions were unwarranted. See *id*. Accordingly it denied the sentence-reduction motions. We address this reasoning in detail when we reach the merits.

\* \* \*

Until now we haven't seriously considered our authority to review § 3582(c)(2) sentence reductions, or denials of such reductions, either pursuant to our broad authority to review any final order of the district courts, 28 U.S.C. § 1291, or the more specific power in 18 U.S.C. § 3742(a)(1), which we have read as allowing us "to review *any* sentence for reasonableness," *United States v. Dorcely*, 454 F.3d 366, 373-74 & n.4 (D.C. Cir. 2006) (relying on *United States v. Booker*, 543 U.S. 220 (2005)). Our prior decisions either silently assumed jurisdiction, e.g., *United States v. Lafayette*, 585 F.3d 435 (D.C. Cir. 2009), or merely stated without analysis that it existed, e.g., *United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013) (jurisdiction under § 1291); *United States v. Cook*, 594 F.3d 883, 885 (D.C. Cir. 2010) (jurisdiction under both § 1291 and § 3742). Of course, those cursory and unexamined statements of jurisdiction "have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); see *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996). But as the Sixth Circuit has found in *United States v. Bowers*,

615 F.3d 715 (6th Cir. 2010), that it could not hear a nearly identical appeal under either 28 U.S.C. § 1291 or 18 U.S.C. § 3742, we thought it necessary to grapple with the issue more explicitly and ordered supplemental briefing.

Denials of sentence reductions are unquestionably "final decisions of [a] district court[]" because they close the criminal cases once again. 28 U.S.C. § 1291; see *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (decision is final when it leaves nothing further to be done). So § 1291 obviously looks promising. But a would-be appellant cannot use that broad grant of jurisdiction to circumvent statutory restrictions on sentencing appeals in § 3742. *In re Sealed Case*, 449 F.3d 118, 121 (D.C. Cir. 2006). Thus the presence of § 3742 might pose an obstacle if an appeal under that section were available and if its provisions barred review for reasonableness, as *Bowers* held, 615 F.3d at 723-28. Indeed, the government invokes our pre-*Booker* decision in *United States v. Hazel*, 928 F.2d 420, 422-25 (D.C. Cir. 1991), which read § 3742 to bar such review. Section 3742(a) allows a defendant to appeal on ground of "violation of law," "incorrect application of the sentencing guidelines," or any upward departure from the Guideline range, and *Hazel* read those specifics to have a negative implication, precluding appeals claiming only unreasonableness. We look at the situation first in light of our circuit law, which in fact now *allows* review for reasonableness in § 3742 appeals. This completely moots the theory that use of § 1291 would undercut § 3742's limitations. We will then briefly consider the situation independent of the "undercutting" theory.

While *Hazel* would be binding in the absence of *Booker*, that case radically changed the landscape by eliminating the Guidelines' mandatory character. With a sentencing judge's departure from a specified "range" no longer subject to the

special requirements of 18 U.S.C. § 3553(b)(1), any negative implications from the specific provisions of § 3742(a) or (b) made little sense, and *Booker* tidied the situation up by declaring that the Sentencing Reform Act "implicitly" provided for review for reasonableness. 543 U.S. at 260-62. See also *Rita v. United States*, 551 U.S. 338, 341 (2007) ("The federal courts of appeals review federal sentences and set aside those they find 'unreasonable.'"). Congruent with if not absolutely compelled by *Booker*, we have made it clear that § 3742 allows us to review "*any* sentence" for reasonableness, "whether within the Guidelines range or not." *Dorcely*, 454 F.3d at 374 (emphasis added); see also *United States v. Olivares*, 473 F.3d 1224, 1231 (D.C. Cir. 2006). Thus § 3742 presents no problem for review under § 1291.

Of course the proposition that an appellant can't avoid restrictions under a path of review designed for his case by proceeding along a more general avenue of review presupposes that the path avoided was actually available. In fact we have serious doubt as to whether a statute specifically directed at appeals of sentences (§ 3742) also extends to those challenging the denial of a § 3582(c)(2) reduction. Section 3742 provides for appeals "of an otherwise final sentence." But "a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense." *Dillon*, 560 U.S. at 827. Indeed, reasoning that an order modifying a sentence "is not, properly speaking, a sentence," at least one circuit has held that § 3742 is inapplicable to any appeal from a sentence-reduction decision, thus leaving free rein for § 1291. *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir. 1993) (Rule 35(b) reduction). But see, e.g., *United States v. McDowell*, 117 F.3d 974, 977 & n.3 (7th Cir. 1997) (reasoning that a *granted* reduction results in a new, modified sentence and so falls within § 3742). Particularly since here the district court's *denials* of appellants' sentence-reduction motions resulted only in final orders—not new sentences by any definition—it

appears that at least the most obvious reading of § 3742 renders it inapplicable. Cf. *United States v. Washington*, 759 F.3d 1175, 1180 (10th Cir. 2014) (finding jurisdiction under § 1291 albeit based on different reasons); *United States v. Colson*, 573 F.3d 915, 916 (9th Cir. 2009) (reaching the same conclusion but providing little in the way of reasoning).

In any event, the availability of appeal under § 3742 need not detain us, given the absence of any obstacle to review for reasonableness under § 1291.

\* \* \*

Thus we reach the merits, and start with a review of the evidence on which the appellants were convicted. The two were key members of a drug ring that brought massive amounts of Colombian cocaine into the District over the course of the 1980s. Led by Rayful Edmond III, the group sold the bulk of that cocaine in an open-air drug market in Northeast D.C. known as "the Strip." See *United States v. Edmond*, 52 F.3d 1080, 1084-86 (D.C. Cir. 1995). Because Butler supplied the organization with the Colombian cocaine that fueled its growth, he occupied a position at the very top of the organization (essentially equal to Edmond himself). Once the drugs arrived in the District, Jones (along with a few others) managed their distribution—overseeing day-to-day drug dealing on the Strip and supervising the "lieutenants" (who supplied street-level dealers and collected the proceeds of their sales). As one of the gang's "enforcers," Jones "use[d] force . . . to keep rival drug distributors from" dealing in their territory and "to ensure that no one interfered with the daily operation . . . on the 'Strip.'" Pre-Sentence Report ¶ 33 (Feb. 13, 1990). After a lengthy jury trial, eleven members of the gang (including Butler and Jones) were convicted of conspiracy to distribute cocaine. The trial judge calculated a range of 324 to 405 months under the Guidelines and

sentenced Butler at the very top and Jones just below (393 months). (It is unclear why Jones's sentence was lower.) As we noted at the start, the reduced range applicable under Amendment 782 was 262 to 327 months.

In considering the appellants' motions for relief under § 3852(c)(2), the district court, as directed by that section, looked to the "factors set forth in section 3553(a)" of Title 18. See *Butler*, 130 F. Supp. 3d at 321-26. These require consideration of both the particular defendant and the public interest. Specifically, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment . . . [and] adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2). Section 3553(a) also requires the district court to consider the "sentencing range" established by the Guidelines, "the need to avoid unwarranted sentencing disparities," and, where relevant, "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(4), (6), (7).

The district court attached great weight to the fact that "[e]ach defendant was a key player in one of the largest drug conspiracies in the history of this city." *Butler*, 130 F. Supp. 3d at 321-22 (citing § 3553(a)(1)-(2)(A)). It stressed the consequences of their activities—how the Edmond gang "enabled drug use and addiction on a scale that up until that point was unprecedented and largely unimaginable in this city" and caused harm "across our city [that] is immeasurable and in many cases irreversible." *Id.* at 322. Although acknowledging that appellants each had a "model disciplinary record" and had availed themselves of mentoring and educational opportunities while in prison, the court concluded

that such factors "do not outweigh the other, more commanding considerations," presumably the serious nature of their crimes. *Id*. at 323-24. Based on those findings, the district court denied the sentence-reduction motions, giving no relief.

Appellants claim that the denials of their sentence-reduction motions were substantively unreasonable for three reasons. First, they argue that because the newly-amended Guidelines already accounted for the nature and seriousness of their offenses (through the weight of the drugs involved and the various role-related enhancements imposed), the district court couldn't double-count those factors in denying their requested reductions. Particularly since the initial sentencing court concluded that these crimes fitted within the Guidelines (rather than requiring upward departures), appellants argue that it is unreasonable for the district court to now find that the same crimes are too serious for sentences within Amendment 782's newly-reduced range.

Indeed one might reasonably think that the district court's role under such a downshift in the Guidelines range would be simply to pick the spot in the new range corresponding to the spot chosen in the old one. But even apart from § 3582(c)(2)'s direction to newly apply the § 3553(a) factors, Amendment 788 clearly ruled out any such automatic shift by making November 1, 2015 the earliest date for a release accelerated by Amendment 782, in order to allow district courts to make "individualized determination[s] . . . of whether [] sentence reduction[s] [are] appropriate." U.S.S.G. Supp. to App'x C, Amend. 788 at 87. Section 3582(c)(2)'s directive to consider the § 3553(a) factors is in any event enough, and explains why we and other circuits have never adopted the view that a district court contemplating such a reduction motion is either required to apply the simple "downshift" notion or even to offer any special reasons

refusing to do so—so long as the court properly applies § 3553(a). See *Lafayette*, 585 F.3d at 439; see also *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Dunn*, 728 F.3d 1151, 1159-60 (9th Cir. 2013); *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012). Just as in an ordinary initial sentencing, the Guidelines provide the "starting point and the initial benchmark" but are "not the only consideration." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Here the court considered the § 3553(a) factors at length (including the nature and seriousness of the offenses) and decided that nothing less than the original sentences would be enough. See *Butler*, 130 F. Supp. 3d at 321-324. In contrast to run-of-the-mill drug gangs, Edmond's "organization regularly procured and distributed hundreds of kilos of cocaine and cocaine base" and "enabled drug use and addiction on a scale that up until that point was unprecedented and largely unimaginable in this city." *Id*. at 322. Based on the appellants' critical roles in that "unprecedented" drug ring, the court found that these crimes required stiffer sentences than the amended guidelines provided and justified the risk of potential disparities. *Id*. at 322-24. While we (or another district court) might have reached a different conclusion were the decisions ours to make, we cannot say that the court acted unreasonably. See *Gall*, 552 U.S. at 51; see also *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

Second, appellants argue that the district court ignored the Sentencing Commission's own findings that middle-aged offenders who served lengthy sentences (as appellants have) pose little risk of recidivism and that the sentence reductions enabled by Amendment 782 would not increase the risk of recidivism. See Appellants' Br. at 25-26 (citing United States Sentencing Commission, *Recidivism Among Offenders Receiving Retroactive Sentence Reductions: The 2007 Crack*

*Cocaine Amendment* (May 2014) and United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004)). As appellants would have it, those studies in combination show there should be little concern over their recidivism. But statistics can only speak to the likely results for the average offender, whereas under § 3553(a) the district court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Although appellants are now in their fifties, the district court concluded that they pose a significant threat to the community because they "were critical to the design and execution of a dominant, enduring, and citywide drug operation" and accordingly "possess the skills, knowledge, and proven resolve necessary to procure and distribute illegal drugs on a massive scale." *Butler*, 130 F. Supp. 3d at 323. Again, we can't say that the district court's concerns were so baseless as to constitute reversible error.

Finally, appellants argue that the district court ran afoul of *Bearden v. Georgia*, 461 U.S. 660 (1983), by resting its denials of their reductions in part on their failure to make financial restitution to the victims of their drug gang. Of course, it would be highly questionable if the district court kept appellants in jail solely because they genuinely couldn't afford to pay restitution—and possibly unconstitutional. See *United States v. Burgum*, 633 F.3d 810, 815 (9th Cir. 2011) ("[T]he Constitution prohibits imposition of a longer prison term based on the defendant's poverty . . . ."); *United States v. Plate*, 839 F.3d 950, 956 (11th Cir. 2016). But appellants' argument completely mischaracterizes what the district court did here. It made no reference whatever to financial repayments but instead considered the "immeasurable and in

many cases irreversible" harm done to the community at large. *Butler*, 130 F. Supp. 3d at 322. Although the court made a linguistic misstep by framing its discussion of the harms that appellants' activities inflicted on the local population, wrongs concededly uncorrected, as a failure to provide restitution, *id*. at 322-23, it is plain from the context that it meant only to stress the magnitude of those harms, clearly part of the "seriousness of the offense" mentioned by § 3553(a). Just as in *United States v. Rangel*, 697 F.3d 795, 804 (9th Cir. 2012), the district court here used an inapt label for its consideration of victim impact, and here as there it is no reason for reversal.

* * *

Accordingly, the judgment of the district court is

*Affirmed*.